The Honorable Ron Fields Prosecuting Attorney Sebastian County Courthouse Fort Smith, Arkansas 72901
Dear Mr. Fields:
This is in response to your request for an opinion regarding a proposed county ordinance requiring persons spreading any form of municipal sewer system waste to obtain a county permit, and imposing a permit fee of $300.00 per truck load of any such waste. You have asked the following specific questions in this regard:
 1. It is a lawful exercise of the quorum Court's legislative authority;
 2. Is this an area of the law which has been preempted by statute from the County regulation;
3. Would such an ordinance withstand Constitutional Muster?
I will first respond to your second question since an affirmative response would be determinative of your other two inquiries. Arkansas Code of 1987 Annotated 8-6-209, which is the codification of Section 12 of the Arkansas Solid Waste Management Act (Act 237 of 1971), states as follows:
 Any municipality or county may, by ordinance, resolution, or order, adopt standards for the location, design, construction, and maintenance of solid waste disposal sites and facilities that are more restrictive than those adopted by the Arkansas Pollution Control and Ecology Commission under the provisions of this subchapter [Solid Waste Management Act; A.C.A. 8-6-201, et seq.].
"Solid wastes" means "all putrescible and non-putrescible refuse in solid or semisolid waste materials resulting from industrial, commercial, agricultural, community, and residential activities."8-6-203(4). "Disposal site" is defined as "any place at which solid waste is dumped, abandoned, or accepted or disposed of for final disposition by incineration, land filling, composting, or any other method." 8-6-203(5). It should also be noted that rules and regulations promulgated by the Arkansas Department of Pollution Control and Ecology pursuant to the Solid Waste Management Act define "Sludge" as any solid, semi-solid, or liquid waste generated from a municipal wastewater treatment plant." See Arkansas Solid Waste Management Code, Sec. II (cc).
It seems clear from a review of these provisions that county regulation in this area has not been preempted under State law, so long as the ordinance does not attempt to regulate the control and abatement of air pollution. See A.C.A. 8-4-306; Attorney General Opinion Numbers 85-219 and 86-171. It is significant to note that those Opinions addressed an ordinance imposing specific requirements in an apparent effort to control and abate air pollution, contrary to 8-4-306. The proposed ordinance in question does not on its face purport to regulate in the field of air pollution. Rather, its provisions appear to fall within the county's grant of authority under 8-6-209 to establish standards ". . . for the location, design, construction, and maintenance of solid waste disposal sites."
It may therefore be concluded, in response to your second question, that county regulation in this area has not as a general matter been preempted.
Your first question focuses upon this particular ordinance, and whether it constitutes a lawful exercise of the Quorum Court's legislative authority. The ordinance raises several concerns which may preclude a simple "yes" or "no" answer to this question. The imposition of a permit requirement may, as an initial matter, be premised upon the county's general authority under 8-6-209 to "adopt standards for the location, design, construction, and maintenance of solid waste disposal sites and facilities." This statute clearly authorizes "more restrictive" standards than those adopted by the Arkansas Pollution Control and Ecology Commission ("Commission"). However, it must be noted that while the ordinance sets forth certain requirements under Sections 3 and 4, the actual standards upon which the permit requirement is premised are unclear. It cannot be conclusively determined whether the standards imposed will be more or less restrictive than those adopted by the Commission. For instance, while Section 3 requires the description of state permits and plans, the issuance of a county permit is not conditioned upon the existence of such permits or plans. It must be recognized that the county cannot lawfully adopt standards which are less restrictive than those imposed under state law.
It must also be noted that the ordinance places no limitations upon the County Judge's authority under Section 3 to ". . . require additional information as needed depending upon circumstances." The exercise of this authority could trigger challenge, particularly if the required information indicates that the county is in fact attempting to regulate the control and abatement of air pollution, contrary to A.C.A. 8-4-306.
Thus, while the ordinance appears on its face to be a lawful exercise of the Quorum Court's legislative authority, a conclusive answer to your first question will depend upon the enforcement process.
You have asked, finally, whether the ordinance would withstand constitutional scrutiny. Several possible avenues of constitutional attack must be considered. The ordinance appears to apply evenhandedly to intrastate and interstate commerce, and would therefore in my opinion withstand a facial attack on that basis. The success of a Commerce Clause challenge will, however, ultimately depend upon the particular facts involved. Your request presents no factual basis for assessing such a challenge, nor is this office generally in a position to make such an assessment.
A challenge based upon the $300.00 permit fee must also be addressed. The ordinance may, as a result of the permit fee, be subject to due process and/or equal protection challenges. An equal protection argument may be premised upon costs of fees imposed for moving other types of waste. It may be successfully contended, in the face of such an argument, that the ordinance is designed to accomplish a legitimate state purpose, that is, the protection of the public health and safety. However, there must also be a showing that the permit fee is rationally related to this governmental purpose. See, e.g., J.W. Black Lumber Company v. Ark. Dept. of Pollution, 290 Ark. 170, 717 S.W.2d 807 (1986). While this issue can only be resolved following a review of particular factual arguments, the ordinance may be constitutionally suspect on this basis.
It may also be contended that the ordinance deprives one of a property interest without just compensation, in violation of theFifth Amendment to the United States Constitution and Article 2, Section 22 of the Arkansas Constitution. It has been stated that "[t]he law recognizes a point at which regulation so restricts the use of property that it exceeds mere regulation and becomes a taking." J. W. Black Lumber v. Ark. Dept. of Pollution, supra,290 Ark. at 174. The Court in J. W. Black Lumber quoted the United States Supreme Court in the case of Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413 (1922) as follows:
 Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power.
The cost of compliance may in this instance be so exorbitant that a "taking" effectively results from enforced compliance. Factors considered in the J. W. Black Lumber case, supra, included the company's net worth, as well as the "before and after value relative to the cost of compliance." 290 Ark. at 174. However, as noted by the United States Supreme Court in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413, this question will depend upon the particular facts of each case.
It becomes apparent that the issues raised in response to your final question can only be resolved in the context of particular factual arguments. However, we hope that the foregoing offers some general guidance in considering potential constitutional challenges.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
STEVE CLARK Attorney General
SC:jlh